# ATTACHMENT NO. 2

FILED
12/29/2020 2:53 PM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Martha Medellin    W JD

Case 5:21-cv-00078-XR   Document 1-3   Filed 02/01/21   Page 2 of 13

2020CI24707

CAUSE NO. _____

| | | |
|---|---|---|
| SOUTHBOUND, INC. | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| v. | § | 57th ____ JUDICIAL DISTRICT |
| | § | |
| FIREMEN'S INSURANCE COMPANY OF | § | |
| WASHINGTON, D.C. and JIM AMATO | § | |
| | § | |
| Defendants | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, SOUTHBOUND, INC., files this original petition against Defendants, Firemen's Insurance Company of Washington, D.C. and Jim Amato, in which Plaintiff seeks monetary relief of more than $1,000,000. In support of this petition, Plaintiff will show the following:

### I. Parties, Venue, and Discovery Level

Plaintiff, Southbound, Inc. (hereinafter "Southbound"), is a Texas corporation and the named insured for the property located at 24123 Boerne Stage Road, San Antonio, Texas 78255.

Defendant, Firemen's Insurance Company of Washington, D.C. (hereinafter "Firemen's"), is a fire and casualty insurance company doing business in Texas that can be served by serving its registered agent for service, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140.

Defendant, Jim Amato, is a Texas citizen and general adjuster for Firemen's and can be served at his place of business at 222 Las Colinas Blvd. West, Suite 1300, Irving, Texas 75039-5433.

The venue of this case is proper in Bexar County, Texas under Sections 15.002 and 15.032 of the Texas Civil Practices and Remedies Code and Section 17.56 of the Deceptive Trade Practices-Consumer Protection Act (hereafter the "DTPA").

1

Plaintiff intends to conduct discovery in this case under Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

## II. Agency and Respondeat Superior

Whenever in this petition it is alleged that Defendants did any act or thing, it is meant that Defendants or their agents, officers, servants, employees, or representatives did such act or thing. They were also done with the full authorization or ratification of Defendants or done in the normal routine, course and scope of the agency or employment of Defendants or their agents, officers, servants, employees, or representatives.

## III. Conditions Precedent

All conditions precedent to recovery have occurred or been performed.

## IV. Facts of the Case

Southbound purchased an insurance policy from Firemen's (Policy Number CPA 4654222-15) to cover property losses at the Leon Springs Business Park for the policy period of October 25, 2018, to October 25, 2019. On or about April 13, 2019, during the subject policy period, a major hail and windstorm caused damage to the seven buildings at the Leon Springs Business Park at 24123 Boerne Stage Road, San Antonio, Texas 78255. Southbound thereafter reported these losses to Firemen's and its agents, who assigned this loss the claim number of 80 PC 000000052376 with a date of loss of April 13, 2019.

On or about April 16, 2019, Firemen's, Jim Amato, and TJ Dohogne of Dohogne Claim Service, an independent adjuster, inspected the Leon Springs Business Park to assess the damage from the subject storm. They also had Calvary Construction (hereinafter "Calvary") inspect the property to prepare an estimate of storm damage from the April 13, 2019 hail and windstorm. Southbound believes that Firemen's and its adjusters uses estimators like Calvary since they are biased for insurers and not objective. Firemen's and Amato also know Calvary will give them low-balled and result-oriented reports and estimates on which they can deny or under pay an insured's storm damage insurance claim.

2

On April 22, 2019, Firemen's and Amato also retained an engineer, Jason Watson of ProNet Group, Inc. (hereinafter "ProNet"), to determine the extent of damage to the buildings at the Leon Springs Business Park from the April 13, 2019 storm and to provide repair recommendations for such damage. Southbound believes that Firemen's and Amato hire engineers like Jason Watson of ProNet because they are biased for insurers and not objective. In this respect, ProNet works almost exclusively for insurers. Firemen's and Amato also know that Watson and ProNet will give them low-balled and result-oriented reports and estimates on which they can deny or under pay an insured's storm damage claim. On May 9, 2019, Watson inspected the buildings at the Leon Springs Business Park.

True to form, in his June 7, 2019 report, Watson and ProNet in their conclusions grossly misrepresented the extent of the hail damage to the seven buildings at the Leon Springs Business Park. Watson and ProNet primarily and improperly claimed that the hail damage to the metal roofs of the buildings and other items was only cosmetic in nature and did not diminish the functionality or service life of those items and that replacement was not required. In doing so, Watson and ProNet were improperly making insurance type conclusions concerning the policy's coverage and improperly applying and interpreting the policy's endorsement on "Limitations on Coverage for Roof Surfacing." What is apparent, however, was that Watson and ProNet were making result oriented conclusions to assist Firemen's and Amato in low-balling the claim.

Based on this biased report, Dohogne and Calvary Construction collaborated in the preparation of a July 29, 2019 estimate for the limited, non-cosmetic hail and wind damage determined by Watson and ProNet. Not surprisingly, Dohogne and Calvary Construction only estimated hail damage of $135,122.81 for replacement cost that did not include any hail damage to the metal roofs at the Leon springs Business Park. Thereafter, in an August 5, 2019 letter, Amato and Firemen's notified Southbound that they were only paying $115,417.93 based on the replacement cost value of $135,122.81, less recoverable depreciation of $19,704.88 and the policy's $2,500 deductible. .

In May of 2019, Southbound through its contractor, Clifford Stratton of Capital Contractors, Inc., hired a loss consultant, Gary Treider of Chaparral Consulting and Forensics (hereinafter "Chaparral"), to provide it with a comprehensive assessment of the damage resulting from the subject storm. On or about May 19, 2019, Treider inspected the property. In a November 19, 2019 report, Treider concluded that hail of up to 3.5 inches in diameter had impacted the Leon Springs Business Park during the April 13, 2019 hail and windstorm. He also concluded that the ability of the metal roof panels to seal had been compromised by the subject storm and would also allow water penetration and leaking, which has subsequently occurred. He finally recommended replacement of the metal roofing panels at the Leon Springs Business Park. This report was sent to Firemen's and Amato.

Southbound also had Clifford Stratton of Capital Contractors, Inc. prepare an estimate for the proper repair of the storm damage to the Leon Springs Business Park from the April 13, 2019 hail and windstorm. In a September 8, 2019 estimate, Stratton determined that the reasonable and necessary cost to properly repair this storm damage was $924,202.32.

On October 14, 2019, Southbound engaged a Texas licensed public adjuster, Gary Pennington of Blackstone Claim Services, LLC (hereinafter "Blackstone"), to assist it with its insurance claim. Gary Pennington and James King of Blackstone reviewed all the claim material and inspected the storm damage to the Leon Springs Business Park. In a December 3, 2019 estimate, Blackstone determined the reasonable and necessary cost to properly repair the damage from the April 13, 2019 hail and windstorm to the seven buildings at the Leon Springs Business Park was $960,912.63 for replacement cost value, less $92,826.38 in depreciation and a $2,500 deductible for an actual cash value amount of $865,586.25. On or about December 16, 2019, Linda Bean, a corporate representative for Southbound, signed a sworn proof of loss for Southbound's insurance claim in this matter reflecting Blackstone's replacement cost value and actual cash value amounts and attached Blackstone's estimate. This proof of loss and estimate was submitted to Firemen's and its adjusters.

Thereafter, Firemen's and its adjusters rejected this proof of loss. Around this time, Blackstone communicated with Firemen's and its adjusters that they and their consultants had missed much of the damage to the Leon Springs Business Park form the subject storm and that the metal roofs were leaking as a result of the storm damage causing interior water damage and tenant complaints. Blackstone had also conducted water tests on the metal roofs and verified the roof leaks.

As a result, on or about February 7, 2020, Watson, Dohogne, Tony DeBartolo from Calvary Construction, Pennington, and King re-inspected the seven buildings at the business park. During this inspection, Pennington and King showed the Firemen's adjusters and consultants the subject roof leaks from the storm damaged metal roofing panels. They also observed the interior water damage in the buildings from the multiple roof leaks, which did not exist prior to the subject storm.

In a March 6, 2020 report, Watson admitted that there was damage to the metal roofing panels, but improperly attributed that damage to factors other than the subject storm and unprofessionally criticized Trieder's findings and conclusions like Watson was an advocate for Firemen's. Watson, however, failed to address the fact that the subject roofs did not leak until after the subject storm. Not surprisingly, Watson mimicked his early findings and cavalierly stated that his conclusions remained unchanged despite the subsequent roof leaks and acknowledgement of roof damage that he missed during his first inspection. Based on this biased and unsubstantiated report, in an April 7, 2020 letter, Amato and Firemen's denied all portions of their claim except for the items that they initially paid. In this respect, Defendants misrepresent policy provisons relating to coverage in this case in violation of Sections 541.060 and 541.061 of the Texas Insurance Code.

To date, Firemen's and Amato have failed and refused to pay Southbound any additional policy benefits for the storm damage to the Leon Springs Business Park from the April 13, 2019 hail and windstorm. Southbound is owed at least $842,996.70 ($960,912.63 less the $2,5000

5

deductible and the previous payment of $115,417.93) for the proper repair of the storm damage to the metal roofs and buildings of the Leon Springs Business Park from the April 13, 2019 hail and windstorm.

## V. Cause of Action for Breach of Contract

According to the insurance policy that Plaintiff purchased, Firemen's has the duty to investigate and pay Plaintiff policy benefits for claims made for damages to Southbound's properties caused by the April 13, 2019 hail and windstorm. The subject hail and windstorm caused substantial damage to the Leon Springs Business Park, which is covered under Plaintiff's insurance policy with Firemen's. Firemen's has breached its contractual obligation and the subject insurance policy by failing to timely and properly pay Plaintiff sufficient policy benefits for the cost to properly repair the storm damage to the Leon Springs Business Park. Firemen's has also breached any contractual provisions on timely investigating, adjusting, and paying Plaintiff's insurance claim. As a result of these breaches of contract, Plaintiff has suffered the damages that are described in this petition.

## VI. Causes of Action for Violation of Chapter 542 of the Insurance Code

Firemen's conduct that is described in this petition violates Chapter 542 of the Texas Insurance Code. Within 15 days after the receipt of either actual or written notice of Plaintiff's hail and windstorm insurance damage claim, Firemen's did not request from Plaintiff any items, statements, and forms that it reasonably believed at that time would be required from Plaintiff for its claim. As a result, Firemen's has violated Chapter 542 by failing to accept or reject Plaintiff's claim in writing within 36 days after receiving either actual or written notice of its claim. Firemen's has also violated Section 542.058 by failing to pay Plaintiff's claim within 75 days after it received either actual or written notice of the claim or within 60 days after any other applicable statutory period. In the event it is determined that Firemen's owes Plaintiff any additional monies, then Firemen's has automatically violated Chapter 542 of the Texas Insurance Code. For these violations, Firemen's owes Plaintiff the 10% per annum interest as

damages for its failure to timely pay the amounts that it did pay and for any unpaid amount under Section 542.060 of the Texas Insurance Code plus reasonable and necessary attorney's fees, prejudgment interest, and court costs.

## VII. DTPA Causes of Action

Plaintiff incorporates all the allegations in this petition for these causes of action against Defendants Firemen's and Amato under the provisions of the DTPA. Plaintiff has met all conditions precedent to bringing these causes of action against Defendants. Specifically, the violations of Defendants Firemen's and Amato of the DTPA include, without limitation, the following matters:

A. By their acts, omissions, failures, and conduct that are described in this petition, Defendants Firemen's and Amato have violated Sections 17.46(b)(5), (7), (12), and (20) of the DTPA. In this respect, Defendants' violations include, without limitation, (1) their unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim; (2) their failure to properly investigate Plaintiff's claim; (3) their hiring of and reliance upon bias adjusters and consultants to obtain favorable, result-oriented reports and estimates to assist Defendants in low-balling Plaintiff's insurance claim; (4) Defendants' misrepresentations of the extent of the storm damage to Plaintiff's property and their misrepresentations concerning the applicability of policy provisons, and (5) their failure to pay for the proper repair of Plaintiff's property on which Defendants' liability had become reasonably clear;

B. As described in this petition, Defendants Firemen's and Amato represented to Plaintiff that the subject insurance policy, Defendants' adjusting and investigative services, and Plaintiff's storm damages had characteristics or benefits that they did not have, which gives Plaintiff the right to recover under Section 17.46(b)(5) of the DTPA;

C. As described in this petition, Defendants Firemen's and Amato represented to Plaintiff that the subject insurance policy, Defendants' adjusting and investigative services, and Plaintiff's storm damages were of a particular standard, quality, or grade when it was of another in violation of Section 17.46(b)(7) of the DTPA;

D. As described in this petition, Defendants Firemen's and Amato represented to Plaintiff that the subject insurance policy, Defendant's adjusting and investigative services, and Plaintiff's storm damages conferred or involved rights, remedies, or obligations that they did not have, which gives Plaintiff the right to recover under Section 17.46 (b)(12) of the DTPA;

E. By representing that Defendants would pay to repair the damages caused by the hail and windstorm and then not doing so, Defendants have violated Sections 17.46(b)(5), (7), and (12) of the DTPA;

F. Defendants have breached an express warranty that the damage caused by the windstorm and hail would be covered under the subject insurance policy. This breach entitles Plaintiff to recover under Sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA;

G. Defendants' actions and conduct, as described in this petition, are unconscionable in that it took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Defendants" unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA; and

H. Defendants' conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50(a)(4) of the DTPA.

All of the above-described acts, omissions, and failures of Defendants are a producing cause of Plaintiff's damages that are described in this petition.

## VIII. Causes of Action for Unfair Insurance Practices

Plaintiff incorporates all the allegations in this petition for these causes of action against Defendants Firemen's and Amato under the Texas Insurance Code. Plaintiff has satisfied all conditions precedent to bringing these causes of action. By their acts, omissions, failures, and conduct Defendants have engaged in unfair and deceptive acts or practices in the business of insurance in violation of Chapter 541 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this petition plus Defendants' failure to properly and reasonably investigate Plaintiff's claim. They also include Defendants' unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim, their failure to pay for the proper repair of Plaintiff's property on which its liability had become reasonably clear, and their misrepresentations concerning the extent of the storm damages to Plaintiff's property and concerning the applicability of policy provisions. They further include Defendants' hiring of and reliance upon biased adjusters and consultants to obtain favorable, result-oriented reports and estimates to assist the insurer in low-balling Plaintiff's insurance claim, which does not constitute a reasonable investigation. In addition, Defendants failed to look for coverage and give Plaintiff the benefit of the doubt. Specifically, Defendants Firemen's and Amato are guilty of the following unfair insurance practices:

8

A. Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

B. Engaging in unfair claims settlement practices;

C. Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue;

D. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim on which Defendants' liability had become reasonably clear;

E. Failing to affirm or deny coverage of Plaintiff's claim within a reasonable time; and

F. Refusing to properly pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim and by conducting a sham and biased investigation that ignored and excluded damage form the subject storm.

Firemen's has also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing. Defendants' conduct as described herein has resulted in Plaintiff's damages that are described in this petition.

## IX. Cause of Action for Breach of Duty of Good Faith and Fair Dealing

Plaintiff incorporates all the allegations of the preceding paragraphs for this cause of action. By its acts, omissions, failures, and conduct, Firemen's has breached its common law duty of good faith and fair dealing by low-balling and partially denying Plaintiff's claim without any reasonable basis and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for its denial. Firemen's has also breached its duty by unreasonably delaying payment of Plaintiff's entire claim and by failing to settle Plaintiff's claim because Firemen's knew or should have known that it was reasonably clear that the entire claim was covered. Firemen's acts, omissions, failures, and conduct are the proximate cause of Plaintiff's damages.

## X. Waiver and Estoppel

Defendants have waived and are estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights or denial letters previously sent to Plaintiff.

## XI. Damages

The above-described acts, omissions, failures, and conduct of Defendants have caused Plaintiff's damages that include, without limitation, the unpaid reasonable and necessary cost to properly repair the storm damage to Plaintiff's property from the April 13, 2019 storm in the amount of $842,996.70, plus the cost of any temporary repairs, interior water damage costs and repairs, and any investigative and engineering fees incurred during the claims process. Plaintiff is also entitled to recover the amount of its claim plus the ten percent per annum interest on the amount Firemen's untimely paid and those amounts it still owes as damages under Section 542.060 of the Texas Insurance Code plus reasonable and necessary attorney's fees, which are to be taxed as costs of the case. All the damages described in this petition are within the jurisdictional limits of this Court.

## XII. Additional Damages

Defendants have also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. As a result, Plaintiff is entitled to additional damages under Section 17.50(b)(1) of the DTPA and Chapter 541 of the Texas Insurance Code.

## XIII. Exemplary Damages

Firemen's breach of its duty of good faith and fair dealing owed to Plaintiff was done intentionally and with "malice" and "gross negligence" as those terms are defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Firemen's are the type of conduct that the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Firemen's for its wrongful conduct and to set an example to deter this Defendant and others similarly situated from committing similar acts in the future.

## XIV. Attorney's Fees

As a result of Defendant's conduct that is described in this petition, Plaintiff has been forced to retain the undersigned attorneys to prosecute this action and has agreed to pay reasonable attorney's fees. Plaintiff is entitled to recover these attorney's fees under Chapter 38 of the Texas Civil Practices and Remedies Code; Chapters 541 and 542 of the Texas Insurance Code; and Section 17.50 of the DTPA.

## XV. Rule 194 Requests for Disclosure

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose, within 50 days of service of this request, the information or material described in Rule 194.2(a) through (l).

WHEREFORE, PREMISES CONSIDERED, Plaintiff *demands a trial by jury* and also requests that Defendants be cited to appear and answer and that after the final hearing, in this case, the court award Plaintiff a judgment against Defendants for the following:

1. Actual damages, economic, additional, and exemplary damages in an amount within the jurisdictional limits of the court, as described herein;
2. Reasonable attorney's fees through trial and on appeal;
3. Ten percent per annum interest on any late payments and any unpaid policy benefits pursuant to Chapter 542 of Texas Insurance Code;
4. Pre-judgment and post-judgment interest as provided by law;
5. Costs of court; and
6. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

*Loree & Lipscomb*
The Terrace at Concord Park
777 E. Sonterra Blvd, Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile:  (210) 404-1310

By: /s/ Robert W. Loree
Robert W. Loree
State Bar No. 12579200
rob@lhlawfirm.com
Stephen Fields
State Bar No. 24096598
stephen@lhllawfirm.com

Attorneys for Plaintiff